IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )   CR. NO. 09-156
                                    )
    vs.                             )
                                    )
SHERMAN ALAN TURNER,                )
                                    )
            Defendant.              )
_____   )


TRANSCRIPT OF SENTENCING

December 11, 2009

---


BEFORE:      THE HONORABLE GERALD BRUCE LEE
             UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:  OFFICE OF THE UNITED STATES ATTORNEY
                     BY: J. CAM BARKER, ESQ.
                         JOHN EISINGER, ESQ.
                     2100 Jamieson Ave.
                     Alexandria, Virginia  22314


FOR MR. TURNER:   OFFICE OF THE FEDERAL PUBLIC DEFENDER
                  BY: AAMRA AHMAD, ESQ.
                      TODD RICHMAN, ESQ.



                         ---


OFFICIAL COURT REPORTER: RENECIA A. SMITH-WILSON,RMR,CRR
                         U.S. District Court
                         401 Courthouse Square
                         Alexandria, VA  22314

1                    (Thereupon, the following was heard in open

2      court at 10:02 a.m.)

3                    THE CLERK:  1:09 criminal 156, United States

4      versus Sherman Alan Turner.

5                    MR. BARKER:  Cam Barker and John Eisinger

6      for the United States.

7                    THE COURT:  Good morning.

8                    MS. AHMAD:  Aamra Ahmad and Todd Richman on

9      behalf of Sherman Alan Turner who is present.

10                    THE COURT:  Good morning.

11                    MR. TURNER:  Sorry, Your Honor.

12                    THE COURT:  Good morning, Mr. Turner.

13                    MR. TURNER:  Good morning, sir.

14                    THE COURT:  Ms. Ahmad, I take it from your

15      submission that you and Mr. Turner reviewed the

16      presentence report?

17                    MS. AHMAD:  Yes, Your Honor, we have, and we

18      have no objections at this time.

19                    THE COURT:  All right.  I think that the

20      only issue that we did not take up was the motion for

21      downward departure.  Did you want to argue that or submit

22      on the papers?

23                    MS. AHMAD:  A motion for a downward

24      departure in criminal history, Your Honor?

25                    THE COURT:  Criminal history, yes.

1          MS. AHMAD:  One moment, please.

2          THE COURT:  Uh-huh.

3          MS. AHMAD:  Your Honor, Mr. Richman will be

4    handling that portion of the argument.

5          THE COURT:  All right.

6          MR. RICHMAN:  Your Honor, I understand at

7    this point given Your Honor's ruling on the legal issue,

8    this is what of a formality, but it does establish the

9    otherwise applicable guideline range were the Court to be

10   sentencing under the Sentencing Guidelines as opposed to

11   the mandatory minimum sentence that the Court has found

12   out applicable.

13         THE COURT:  Well, if you'd rather I not

14   address it, I don't have to.  I wanted to make sure you

15   had a chance to make your record.

16         MR. RICHMAN:  I do think it should be.  I

17   think that's accurate that we should make a record.

18         We submit that even when the Court is

19   looking at the otherwise applicable guideline range, that

20   that is still driven entirely by conduct from the early

21   1980s.

22         Both in terms of the offense level and in

23   terms of the criminal history category, Mr. Turner gets to

24   criminal history two as a result of those convictions.

25         The only reason that they count despite

being so old is that he served on those until 2000.  But
at that point, they were -- the latest conviction at that
point was 16 years old.  It was 25 years old by the time
of this offense.

I would submit that offense has little to do
with how Mr. Turner had lived his life in the nine years
between 2000 and 2009.  And, therefore, that the Court
shouldn't take it into account in determining the
guideline range.

But here as I said, it's being counted on
both parts of the scale.  It's being counted in criminal
history.  It's also being counted in the offense level
because one of the ways that the offense level is
calculated basically includes looking at the prior
offenses for this kind of offense.

So, we -- and, in fact, there's not only
that.  Those convictions are what made his conduct here
criminal in the first place.  Otherwise, there is not even
any criminality here.  So it would be zero months but for
those offenses.  So those offenses are really factoring in
three different ways.

And so on the motion for downward departure
under 4(a)1.3, we would argue that at least the Court
should move the otherwise applicable guideline range to
category one.  That would result in a range of 24 to 30

1    months instead of 27 to 33.

2                    THE COURT:  Thank you.

3                    MR. RICHMAN:  Thank you, Your Honor.

4                    MR. BARKER:  Yes, Your Honor, we would just

5    rest on our brief, specifically page 19 of our position,

6    in which we argue that a downward departure is not

7    appropriate.

8                    We would just ask that the Court impose the

9    minimum mandatory sentence of 15 years.

10                   THE COURT:  All right.

11                   Let the record reflect this matter is before

12   the Court for sentencing, that the parties have briefed

13   the matter, and the remaining unresolved objection is a

14   motion for downward departure of criminal history category

15   from criminal history category two to one.

16                   Criminal history is an assessment of an

17   offender's prior record.  And within criminal law, prior

18   record is deemed to be an important factor in determining

19   what punishment to impose for current offense.

20                   In this particular case, the defendant,

21   Mr. Turner is before the Court for possession of a firearm

22   after having been convicted for a crime punishable by more

23   than one year of prison.

24                   His prior record is quite lengthy.  He has

25   been convicted of ten different charges in the past

ranging from theft, larceny from the person, statutory burglary, grand larceny, petty larceny, receiving stolen goods, possession of drug paraphernalia, robbery, use of a firearm which committing a robbery.

The last of these offenses occurred in 1984 when the defendant was 25 years old. At the time of the offense, the defendant was addicted to drugs.

In 1985, he was sentenced to 29 years in prison for armed robbery and use of a firearm while committing a robbery and the defendant spent 15 years in prison. He was paroled in February 2000, and he has been living in our community basically for about ten years without any major crimes.

Criminal history category can present problems. And the Court has to determine whether that criminal history here accurately represents the defendant's prior record.

The applicable guideline 4(a)1.3 explains that the Court may grant a downward departure from one criminal history category to another where there has been a significant period of time with no intervening criminal behavior and the current offense where the defendant had minor misdemeanor convictions close to ten years prior to the instant offense and there were no criminal behavior in the intervening year.

1          I'm focused on the nature of the prior

2    record, the fact that there is a record that the -- this

3    is the defendant's record.  It's an accurate

4    representation of it.

5          Certainly, the Court could take into account

6    on 3553(a) that there have been many years here since his

7    last contact with the law.  But I'm of the opinion that it

8    does not overstate the seriousness of his prior record.

9    And therefore, I will deny the motion for downward

10   departure.  This is a mandatory minimum case.

11          Mr. Barker, I take it that your last

12   statement was the government's allocution, but if there's

13   more you want to say, now is your time to say it.

14          MR. BARKER:  Your Honor, we rest on our

15   papers.

16          THE COURT:  All right.

17          Ms. Ahmad, I'll give you a chance to make a

18   statement.

19          MS. AHMAD:  We understand that based on the

20   Court's decision on Tuesday, that larceny from the person

21   is a violent felony, that the mandatory minimum here is

22   15 years, and this Court is bound to impose a sentence of

23   at least 15 years.

24          We submit as the government does, that a

25   sentence at the mandatory minimum is appropriate in this

1   case for the reasons stated in our memorandum and in

2   consideration of the 3553(a) sentencing factors.

3              That said, however, the lowest sentence that

4   this Court is authorized to impose in this case is just

5   not justified.

6              Fifteen years is not justified in this case

7   because it is based entirely on Mr. Turner's conduct from

8   25 to 30 years ago.  All three of his predicate offenses

9   were committed from 1980 to 1984.

10             Fifteen years is too high of a sentence to

11  pay.  Aside from the commission of this offense,

12  Mr. Turner's conduct since his release from incarceration

13  ten years ago proves that he is no longer an armed career

14  criminal.  He has been drug free, even when prescribed

15  serious pain killers after his leg amputation.  And aside

16  from this offense he has not been involved in any criminal

17  activity.

18             Fifteen years is too high because the

19  sentence gives absolutely no credit for Mr. Turner's

20  decision to plead guilty and to accept responsibility for

21  this offense.

22             The guideline range even with a three level

23  reduction for acceptance of responsibility is below the

24  mandatory minimum.

25             The fact that the government argues in its

1    sentencing memorandum if ACCA does not apply, then the

2    Court can impose a guideline sentence of 27 months to

3    33 months indicates that the government itself does not

4    view Mr. Turner as a present danger.

5            Finally, a substantial number of people in

6    this community have come forward to tell the Court that

7    Mr. Turner is not an armed career criminal and he should

8    not be sentenced as one.

9            He has submitted 18 letters from people in

10   the community saying that.  On September 18th, the

11   original date of sentencing, a full courtroom of people

12   were here to say that.  And the support is not just from

13   his family.  It's also from law enforcement officers and a

14   fire fighter who knows Mr. Turner from the motorcycle

15   club.

16           Since this case was charged, the Office of

17   the Federal Public Defender has reached out to the United

18   States Attorney's Office and supervisors there to explain

19   that Mr. Turner is exactly the kind of defendant who

20   should not be subject to this mandatory minimum because of

21   the age of his predicate offenses and because of his

22   exceptional rehabilitation.

23           In response, the United States Attorney's

24   Office has said that it disagrees that Mr. Turner 's case

25   is exceptional.  Instead they believe that Mr. Turner must

1   be charged with the most serious offense that their office

2   can prove.

3                It is my view that the United States

4   Attorney's Office charging decision in this case shows

5   that mandatory minimums can be wrongfully applied.

6                If Mr. Turner's case does not qualify for an

7   exception of the general rule of charging the most highest

8   offense, then I have to ask, what defendant does qualify

9   for that exception?

10               For these reasons, it makes no sense at

11  least -- to spend at least $100,000 incarcerating

12  Mr. Turner for 15 years.  And it will cost that much due

13  to his age, due to the length of the sentence, and due to

14  his impairment.

15               Fifteen years is the mandatory minimum that

16  we typically see in drug cases where firearms are used.

17  It's a mandatory minimum that we see when people produce

18  images of child pornography.

19               Mr. Turner is 50 years old and for him a

20  15-year sentence is a lifetime.  This crime is a serious

21  crime, and Mr. Turner does not take that lightly.  He

22  understands that it's serious and that a punishment must

23  be imposed.  But at the same time, this is a status crime

24  and it is not a violent crime.

25               It is a failure in my view of our criminal

1    justice system that this Court is prohibited from judging

2    Mr. Turner based on who he is today.  Instead he is being

3    sentenced today for what he did over 25 years ago.

4           My office is proud to represent Mr. Turner,

5    and we would like to recognize that he has a number of

6    family and friends here today to support him.

7           His mother is here.  His wife is here, and

8    there are a number of other friends and family members.

9           THE COURT:  Where is his mother?  All right.

10   Thank you for coming.  Thank you for coming.

11          Thank you for coming, sir.

12          MS. AHMAD:  We'd like to tell them that we

13   will continue to represent Mr. Turner on appeal of the

14   legal decision that this Court has made.

15          And, we have been in touch with state court

16   attorneys who, on Mr. Turner's behalf, are challenging in

17   state court his larceny from the person conviction.  And I

18   just wanted to say that for the benefit of the family and

19   friends who are here today.

20          THE COURT:  All right.  Thank you.

21          Mr. Turner, if you'd come to the podium with

22   your lawyers, please.

23          MR. TURNER:  Good morning, Your Honor.

24          THE COURT:  Good morning, Mr. Turner.  Is

25   there any statement you care to make in your own behalf?

1            MR. TURNER:  Yes, sir.  Ms. Ahmad, put it

2    very well, very well put as to my accomplishments but

3    there is some things I would like to say to the Court.

4            THE COURT:  I'm listening.

5            MR. TURNER:  First of all, Your Honor, I'd

6    like to thank you for presiding over this case.  I think

7    that you were very lenient in letting my lawyers prepare

8    an argument for this particular case.  You could have very

9    easily in September said he fits the category.  So be it.

10           Again, I'd like to thank you for that.  But

11   also I need to apologize to my wife.

12           THE COURT:  All right.

13           You can face her.  You don't have to face me

14   if you're talking to her.

15           MR. TURNER:  Excuse me, Your Honor.

16           THE COURT:  Take your time.

17           MR. TURNER:  To my wife, Teresa, since I was

18   released from that period of incarceration -- I'm trying

19   to gather myself.

20           Since I was released from that period of

21   incarceration, we met, started this journey to help me

22   reenter society, to be positive, to be a taxpaying

23   law-abiding citizen.

24           For us to be at this point here, baby, I'm

25   utterly sorry.  I brought you this far just to leave you

1   out here to fend for yourself, and to take care of our

2   daughter.  I apologize.

3         It's very hard, sir.  Since my release from

4   prison, again, I worked diligently -- diligently, to

5   reestablish myself in this society.  I could have very

6   easily went back to the lifestyle I was accustomed to, to

7   drug uses, to violence, whatever.  I chose not to do that.

8         Instead, I was gainfully employed.  I went

9   to school for four years.  I got my electrician's license.

10   I got my electrician's license since this case has been

11   pending, sir.  I supported my wife, my family, and -- I

12   lost my train of thought.

13         I am very remorseful for the situation that

14   I find myself in because had it not been for a brief

15   again, baby, had it not been for a brief attempt at

16   infidelity, I wouldn't even be here, Your Honor.

17         The fact of the matter is I did own and

18   possess that weapon.  I had that weapon for my own

19   protection because I fell victim to my ego.  My ego told

20   me -- after the amputation of my leg in 2004, that I

21   couldn't adequately defend myself, my property or my

22   family, not that there were any posable threats, except

23   here.

24         I apologize.  I had that gun for my

25   protection.  Because of the reality of this, I'm an

1    amputee from the waist -- from the thigh down.

2                My 14-year old grandson gave me a stiff

3    shove.  I'm on the ground trying to pick myself up.  I've

4    always been a maverick man, fight my own battles.  I don't

5    want nobody do nothing for me.

6                Even after I lost my leg, if I stumbled and

7    fell, I refuse to let somebody pick me up.

8                Again, I want to express that remorse.  I'm

9    very sorry for what I did.  I know it wasn't right.

10               Just one more thing, Your Honor.  I got a

11   25-year old daughter.  My wife -- she has terminal cancer,

12   stage four.  They let her out the hospice for all intents

13   and purposes to come home to die.  It's not treatable.

14   Chemo is not working.  We're making her comfortable in our

15   home.

16               So, I've been the bread winner in the last

17   months.  My wife's been staying home nursing my daughter.

18               To leave her out here, this woman is losing

19   a husband and daughter in the same instance, with no fault

20   of her own.

21               I just want to apologize to you again, love.

22   I want to apologize to the Court for putting myself in

23   this position, for being here, for even having to let

24   you -- I'm like the stupidest person that ever stood over

25   here, Your Honor.

This is a life sentence for me in all intents and purposes. I'm 50 years old. Do 85 percent of 15 years is almost 13 years. Be 63 when I get out.

All the things that I worked for, it's gone. Will I have an opportunity to work and get it back, I doubt it. I doubt it very seriously.

At 63, to start another career, my career started over three times already, after my period of incarceration, after the amputation of my leg and now, after this period of incarceration, I will be trying to start and forge another career. It's highly unlikely that that will occur, but I will strive for it. It's not like I'm giving up on myself. I'm not going to do that.

With that said, Your Honor, I hope that gave you a view of my intellect, my feelings, my heart. And I ask you, Your Honor, to please consider the fact that I have not had a criminal charge since 1984. I had two traffic tickets.

And again, had it not been for my attempt at infidelity in that park that night, I wouldn't be here in front of you, sir. But that's said.

THE COURT: All right, Mr. Turner, you're before the Court for possession of a weapon, having been convicted of a felony. And you have humbly explained what you've done and why you did it. And I wondered what in

1    the world you were thinking why you needed a weapon.

2              And, I am coming away with the idea that

3    maybe you were not connected with the underworld.  I could

4    not tell why you had a weapon.  Because all the other

5    information I had about your work record, becoming an

6    electrician, working with the motorcycle club and taking

7    care of your family seemed that you had separated yourself

8    from the underworld.

9              MR. TURNER:  And I have, Your Honor, a long

10   time ago.

11             THE COURT:  Well, I don't have the power to

12   make a decision about what charges are brought against

13   you, and your criminal record is what it is.  It's bad.

14   And, one cannot put that aside lightly in terms of what

15   your prior criminal record was.

16             A sentence here that I have to impose is one

17   called for by the Congress, not by the judge.  And it's

18   one that the Congress has decided ought to be applied for

19   those who have prior felony records.

20             And typically, a person with a prior felony

21   record who is back before the Court in this circumstance

22   needs to be separated from us for a very, very long period

23   of time.

24             Your lawyers have been afforded an

25   opportunity and I think they have as you've acknowledged

1    and the government, have had a significant period of time

2    to brief all the legal issues.

3            I've given it as much consideration as I

4    could give it as thoughtfully as I could and considered

5    all the precedents that bind the Court that I have to

6    follow from other circuits, and you will now have an

7    opportunity to have this matter reviewed by the Court of

8    Appeals.

9            So -- and I also want to note that the Court

10   of Appeals will not have the opportunity to see what I saw

11   today, to see what I saw in the initial suppression

12   hearing or to see the support that you have from the

13   community that was present at the last sentencing hearing

14   and to fully appreciate as I do what you've said here

15   about who you are today and how you've lived your life for

16   the last ten years.

17           And it seems to me that if they could see as

18   I do, that you are a person who I think has made a change,

19   a dramatic change, who did a stupid thing for no reason,

20   abandoned his marriage vows and hurt his family, hurt

21   himself in a way that you will have to live with.

22           But this is a situation that you brought out

23   of your own making.  So what I'm going to do is this.  I'm

24   going to impose a sentence that I'm required to impose

25   which is 180 months in the custody of the Bureau of

1  Prisons and require you to pay $100 special assessment

2  right away.

3          And I place you on a term of supervised

4  release for a term of five years upon your release from

5  incarceration.

6          You are required to participate in substance

7  abuse testing and treatment at the direction of the

8  probation officer which may include testing.

9          Based upon your financial circumstances, and

10  I make a judgment you do not have the ability to pay any

11  fine or cost of incarceration or cost of supervision, and

12  the $100 special assessment has to be paid right away.

13          And I will allow you to report to the

14  institution at the time of designation, and no fine will

15  be imposed.  Thank you.

16          MS. AHMAD:  Your Honor, we would like to

17  request Petersburg in Virginia or alternatively, a

18  facility close to the Northern Virginia area.

19          THE COURT:  Northern Virginia, not

20  Cumberland, Maryland?

21          MS. AHMAD:  Or Cumberland, Maryland.

22          THE COURT:  Then I recommended FCI

23  Petersburg or Cumberland.  Obviously, it's not up to me.

24  It's up to the Bureau of Prisons.

25          Thank you.

```
1                    MR. TURNER:  Your Honor, I got a question.

2                    THE COURT:  Yes.

3                    MR. TURNER:  So, they going to contact me

4       and tell me when to report to the Bureau of Prisons?

5                    THE COURT:  Yes.

6                    MR. TURNER:  All right.  Thank you, Your

7       Honor.  That's what I was going to ask for self surrender.

8                    THE COURT:  Well, that is self surrender.

9                    MR. TURNER:  Yes, sir.

10                   THE COURT:  I'm going to let you have self

11      surrender.

12                   Thank you.

13                   MR. TURNER:  Thank you.

14                   THE COURT:  I'm going to take about a

15      ten-minute recess and come back to the matter under seal

16      matter.  Make it a 15-minute recess.

17                   (Proceeding concluded at 10:43 a.m.)

18

19

20

21

22

23

24

25
```

1              CERTIFICATE OF REPORTER

2

3          I, Renecia Wilson, an official court reporter

4    for the United State District Court of Virginia,

5    Alexandria Division, do hereby certify that I reported by

6    machine shorthand, in my official capacity, the

7    proceedings had upon the sentencing in the case of United

8    States of America vs. Sherman Alan Turner.

9          I further certify that I was authorized and

10   did report by stenotype the proceedings and evidence in

11   said sentencing, and that the foregoing pages, numbered 1

12   to 19, inclusive, constitute the official transcript of

13   said proceedings as taken from my shorthand notes.

14          IN WITNESS WHEREOF, I have hereto subscribed

15   my name this 18th day of February , 2010.

16

17          _____

                Renecia Wilson, RMR, CRR
18              Official Court Reporter

19

20

21

22

23

24

25