**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-CR-156 (GBL) |
| | ) | Judge Gerard B. Lee |
| | ) | |
| SHERMAN ALAN TURNER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT SHERMAN ALAN TURNER'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
UNDER 28 U.S.C. § 2255**

Pursuant to 28 U.S.C. § 2255, Petitioner Sherman Alan Turner, who currently is

incarcerated under 18 U.S.C. § 922(g) for possessing a firearm as a felon, respectfully moves this

Court, through undersigned counsel, to correct the 15-year mandatory minimum sentence that a

now-overturned provision of the Armed Career Criminal Act ("ACCA") required the Court to

impose.  Per the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551

(2015), Mr. Turner does not qualify as an armed career criminal.  As a result, Mr. Turner's 15-

year sentence is illegal because it exceeds the otherwise applicable 10-year statutory maximum

for his offense and is unconstitutional because it violates due process of law.  This is the first

time Mr. Turner has sought collateral review of his sentence.  As Mr. Turner has been

incarcerated for five and one-half years and already has served a sentence twice as long as the

maximum sentence within the applicable Sentencing Guidelines range, the Court should grant

this motion, vacate his illegal sentence, and resentence him to, at most, time served.

## STATEMENT OF FACTS

Mr. Turner is a 56-year-old man who was charged with possession of a firearm by a felon for possessing in his vehicle a small "pocket" pistol that he obtained for his personal protection following the amputation of his right leg.  On June 2, 2009, Mr. Turner pleaded guilty to one count of possession under 18 U.S.C. § 922(g).  The government presented no evidence, and made no argument at sentencing, that Mr. Turner had ever used the pistol in self-defense, or for any illegitimate purpose.[1]  In fact, except for this firearm possession that landed him back in prison after 10 successful years in society, Mr. Turner had not committed any legal offense beyond a minor traffic infraction, much less a crime of violence, since his early twenties.

Prior to the Supreme Court's opinion in *Johnson*, however, the ACCA mandated a 15-year minimum sentence for a felon in possession of a firearm who previously had been convicted of three categorically "violent" felonies.  18 U.S.C. § 924(e)(1).  The ACCA defined as "violent" any felony that (1) "ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another," (2) was "burglary, arson, or extortion, [or] involv[ed] [the] use of explosives," or (3) "*otherwise involve[d] conduct that presents a serious potential risk of physical injury to another*."  18 U.S.C. § 924(e)(2)(B)(i)-(ii) (emphasis added).[2]  The Probation Office and the Government agreed that, absent application of the ACCA, the recommended Sentencing Guidelines range was 27 to 33 months in prison in Mr. Turner's case.  *See* Ex. 2

---

[1] A police officer found the pistol in Mr. Turner's vehicle after encountering Mr. Turner in a federal park area after closing.  *See* Ex. 1 (Presentence Investigation Report [PSIR], rev'd Sept. 10, 2009), ¶ 13.  Mr. Turner took responsibility for illegally possessing the pistol and pleaded guilty to possession of a firearm by a felon, reserving only his right to challenge the legality of the search and the sentence.  *See id.* ¶ 27.

[2] The italicized text beginning with "or otherwise…" is known as the "residual clause" of the ACCA, and is the provision recently ruled unconstitutional by the Supreme Court in *Johnson*.

(Gov't Sentencing Br., ECF No. 48), at 19.  Moreover, the otherwise-applicable statutory

maximum incarceration for his offense – ordinarily applicable in only the severest of cases – was

10 years.  *See* 18 U.S.C. § 922(g); 18 U.S.C. § 924(a)(2).  As a young man addicted to drugs,

however, Mr. Turner had been convicted of three (albeit dated) theft offenses that all then

qualified as predicate offenses for the application of the ACCA's 15-year mandatory minimum

prison sentence.

The relevant offenses considered by this Court were (1) an unarmed burglary of an

unoccupied residence, (2) an armed robbery involving no physical harm to the victims, and (3) a

purse-snatching for which Mr. Turner was an accomplice (*i.e.*, larceny from the person under

Virginia Code § 18.2-95, or the "pickpocketing" offense).  At issue before the Court was whether

Mr. Turner's pickpocketing offense qualified as "violent" under the ACCA's residual clause,

thus saddling Mr. Turner with the third purportedly violent felony required for application of a

15-year mandatory minimum sentence.  But the United States Court of Appeals for the Fourth

Circuit had already once deemed larceny from the person a categorically violent felony under the

ACCA's residual clause, *see United States v. Smith*, 359 F.3d 662 (4th Cir. 2004), and under the

new analytical framework announced in *Begay v. United States*, 553 U.S. 137 (2008), this Court

held that larceny from the person remained a categorically violent felony post-*Begay*, consistent

with the opinions of numerous other Circuits and a sister court in the Eastern District of

Virginia.[3]  *See* Ex. 3 (Mem. Op. ECF No. 63), at 7-8, *passim*.

---

[3] Mr. Turner did not take issue with the fact that the burglary and the robbery qualified as
"violent" offenses under the ACCA.  Those offenses were the other two predicate offenses that
drove Mr. Turner's 15-year prison sentence.

Absent the mandatory sentence, the Court could have taken into account a number of mitigating facts in determining an appropriate sentence under 18 U.S.C. § 3553.[4]  But Congress had left the Court without discretion to consider the surrounding circumstances or any of Mr. Turner's past accomplishments.  So, on December 11, 2009, with hands tied, this Court sentenced Mr. Turner to a 15-year prison sentence under the ACCA, which both vastly outstripped the 27 to 33 month Sentencing Guidelines range that otherwise would have applied in Mr. Turner's case and exceeded the statutory ceiling of 10 years imprisonment.  *See* Ex. 2 (Gov't Sentencing Br., ECF No. 48), at 19.[5]

Mr. Turner timely appealed his sentence on May 7, 2010, arguing that larceny from the person is not a "violent felony," and noting variation, depending on the state of conviction, as to whether pickpocketing would qualify a person for sentencing under the ACCA's residual clause. Controlled by its recent decision in *United States v. Jarmon*, 596 F.3d 228 (4th Cir. 2010), which re-established larceny from the person as a violent felony post-*Begay*, the Fourth Circuit summarily denied Mr. Turner's appeal.  *See United States v. Turner*, No. 09-5220, 4th Cir. Nov. 17, 2010 (*per curiam*) (unpublished op.).

On February 7, 2011, Mr. Turner filed a petition for *writ of certiorari* to the Supreme Court.  The Supreme Court denied the petition, but not without a scathing dissent from Justice Scalia.  While urging his fellow justices to strike down the residual clause as unconstitutionally

---

[4] Those mitigating facts are discussed in detail in Section III below.

[5] Application of the ACCA enhanced Mr. Turner's sentence and imposed a mandatory minimum sentence of 180 months in prison, and a Guidelines range of 135 to 168 months in prison (corresponding to offense level 30 and criminal history category of IV).  *See* Ex. 1 (PSIR), ¶¶ 102-04.

vague, Justice Scalia remarked that, under the Fourth Circuit's interpretation, even "Oliver Twist [would qualify as] a violent felon."  *See Derby v. United States*, 131 S. Ct. 2858, 2859 (2011).

Having exhausted all rights to appeal, on April 26, 2013, Mr. Turner petitioned the President of the United States to commute his sentence.[6]  Shortly thereafter, the government transferred Mr. Turner to a low-security prison camp.  Although Mr. Turner's petition has not been granted, it also has not been among the approximately 5,000 commutation petitions already denied by the President.

Undergirding this motion, the relief Justice Scalia would have given Mr. Turner four years ago finally arrived on June 26, 2015, when the Supreme Court struck down the ACCA's residual clause as unconstitutionally vague.  *Johnson*, 135 S. Ct. at 2557-58, 2567-68.  Because larceny from the person is not a violent felony under the ACCA, Mr. Turner does not have the three predicate convictions required for its application, and he is not, and *never was*, an armed career criminal eligible for an enhanced sentence.[7]  Mr. Turner's sentence of 15 years in prison violates the statutory maximum sentence for his firearm possession and Mr. Turner's right to due process under the United States Constitution.  His sentence is therefore *per se* illegal.

---

[6] So moved by Mr. Turner's plight, upon learning of his circumstances, former United States District Judge James Robertson wrote to the President of the United States asking him to give "close attention" to Mr. Turner's petition.  *See* Ex. 4-A (Letter of Support from Judge James Robertson).

[7] No one has ever suggested that Mr. Turner's conviction for larceny from the person qualifies as a predicate offense under any other clause of the ACCA, and any other reading of the ACCA is implausible.  *See* Section I.A., *infra*.

**ARGUMENT**

Title 28 U.S.C. § 2255(f)(3) permits a prisoner to challenge his sentence within one year of a Supreme Court decision announcing a "newly recognized" right "retroactively applicable to cases on collateral review." A defendant is entitled to resentencing when his original sentence was imposed "in violation of the Constitution or laws of the United States," or is "in excess of the maximum authorized by law." *Id.* § 2255 (a)-(b). Sherman Turner is entitled to such relief.

## I. SHERMAN TURNER IS ENTITLED TO RESENTENCING BECAUSE HIS CURRENT ACCA SENTENCE VIOLATES DUE PROCESS, EXCEEDS THE STATUTORY MAXIMUM, AND RESULTS IN A FUNDAMENTAL MISCARRIAGE OF JUSTICE.

Prior to the Supreme Court's decision in *Johnson*, a prior offense qualified as a "violent felony" under the ACCA if it: (1) "ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another," (2) was "burglary, arson, or extortion, [or] involv[ed] [the] use of explosives," or (3) "*otherwise involve[d] conduct that presents a serious potential risk of physical injury to another.*" 18 U.S.C. § 924(e)(2)(B)(i)-(ii) (emphasis added). In *Johnson*, the Court concluded that sentences predicated in whole or in part upon prior offenses falling within the third category – otherwise known as the residual clause – "den[y] fair notice to defendants and invite[] arbitrary enforcement by judges," denying a defendant his right to due process under the Constitution. 135 S. Ct. at 2557.[8] Because Mr. Turner's pickpocketing

---

[8] The Supreme Court found two features of the residual clause defective. First, under the categorical approach mandated by *Taylor v. United States*, 495 U.S. 575 (1990), "[d]eciding whether the residual clause covers a crime . . . requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." *Johnson*, 135 S.Ct. at 2557. The Court found this inquiry to invite too much speculation as to what conduct the ordinary conduct of a case involves. Second, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. The Court found it impossible to measure "serious potential risk" against the risk associated with the ordinary commission of the enumerated offenses of burglary,

offense was one of the (only) three offenses triggering application of the ACCA, and because

pickpocketing qualifies as a predicate offense only under the ACCA's stricken residual clause,

Mr. Turner is not an "armed career criminal" and does not qualify for an enhanced sentence

under the ACCA.

A.    **Mr. Turner Is Not An Armed Career Criminal and Does Not Qualify For Enhanced Sentencing.**

With the invalidation of the ACCA's residual clause, Mr. Turner does not qualify as an

armed career criminal because his conviction for larceny from the person is not a "violent

felony" under one of the ACCA's two remaining clauses giving meaning to the term "violent."

First, the offense does not "have as an element the use, attempted use, or threatened use of

physical force against the person of another." [9] 18 U.S.C. § 924(e)(2)(B)(i); *see also* Va. Code

Ann. 18.2-95 (West 1998) ("Any person who (i) commits larceny from the person of another of

money or other thing of value of $5 or more, … shall be guilty of grand larceny…."); Va.

Practice Jury Instr. § 79.1 (Westlaw Va. Practice Series 2009 ed.) (outlining the elements to

include: (1) the taking and carrying away, (2) of property worth $5 or more, (3) from the person

or presence of its owner (4) against the owner's will and consent, (5) with intent to permanently

deprive the owner of the property); *see also Garland v. Commonwealth*, 446 S.E.2d 628, 630

(Va. Ct. App. 1994).  Second, under Virginia law, larceny from the person does not constitute

"burglary, arson, or extortion," or "involve[] [the] use of explosives."  18 U.S.C. §

---

arson, extortion, and crimes involving explosives, because "[t]hese offenses are 'far from clear in respect to the degree of risk each poses.'"  *Id.* (citing *Begay*, 553 U.S. at 143).

[9] The force required under this subsection of the ACCA means "violent force," *i.e.*, "strong physical force" that is "capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010).  The elements of Virginia's larceny from the person offense clearly do not include the type of violent force required of a predicate felony under 18 U.S.C. § 924(e)(2)(B)(i).

924(e)(2)(B)(ii).  Thus, Mr. Turner does not have the three predicate offenses required for application of the ACCA.  He is not an armed career criminal, and he does not qualify for the mandatory minimum sentence he is serving.

**B.     Mr. Turner's Sentence Is Prohibited by Law, Violates Due Process, and Represents a Fundamental Miscarriage of Justice.**

Mr. Turner's current sentence is illegal, violates his right to due process, and results in a fundamental miscarriage of justice.  A sentence beyond the statutory maximum is illegal and, according to Fourth Circuit precedent, can never be upheld.  *United States v. Lemaster*, 403 F.3d 216, 220 n.2 (4th Cir. 2005); *United States v. General*, 278 F.3d 389, 399 (4th Cir. 2002); *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992); *see also DeRoo v. United States*, 223 F.3d 919, 923, 926 (8th Cir. 2000) (*sua sponte* vacating an erroneous ACCA sentence in a federal habeas appeal because it exceeded the statutory maximum, and therefore, was illegal).[10]  The statutory maximum penalty for Mr. Turner's firearm offense is 10 years, yet he currently is serving a 15-year prison sentence.  *See* 18 U.S.C. § 922(a)(2) (establishing for the offense of possession of a firearm by a felon a statutory maximum penalty of 120 months imprisonment).  His sentence necessarily violates the laws of the United States rendering this petition for relief cognizable under 28 U.S.C. § 2255.  *See United States v. Newbold*, 791 F.3d 455, 460 (4th Cir. 2015) (granting § 2255 relief to a defendant whose original ACCA sentence was rendered invalid by a subsequent change in the law, and explaining that "[s]uch circumstances, where 'a change

---

[10] *See, e.g.*, *United States v. Bushert*, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993) ("it is both axiomatic and jurisdictional that a court of the United States may not impose a penalty for a crime beyond that which is authorized by statute"); *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1283 (11th Cir. 2013) ("The concern with an erroneous sentence *above* the statutory maximum is that the sentencing court 'exceeded [the punishment] authorized by the legislature.' . . . Thus, there are serious, constitutional, separation-of-powers concerns that attach to sentences above the statutory maximum penalty authorized by Congress.").

in law reduces the defendant's statutory maximum sentence below the imposed sentence, have

long been cognizable on collateral review'") (quoting *Welch v. United States*, 604 F.3d 408, 412-

13 (7th Cir. 2010)).

Additionally, as explained in *United States v. Shipp*, 589 F.3d 1084 (10th Cir. 2009),

where a defendant "does not constitute an 'armed career criminal' for purposes of the ACCA"

and is sentenced in excess of the otherwise applicable statutory maximum for his offense of

conviction, he receives "'a punishment that the law cannot impose on him'" and "his due process

rights [are] violated." *Id.* at 1091 (citing *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)).[11]

Indeed, "'[t]here can be no room for doubt that such a circumstance inherently results in a

complete miscarriage of justice and presents exceptional circumstances that justify collateral

relief.'" *Id.* (citing *Davis v. United States*, 417 U.S. 333, 346-47 (1974)) (emphasis added); *see*

*also Whalen v. United States*, 445 U.S. 684, 688-89 (1980) (due process prohibits imposition of

sentence in excess of statutory maximum based on clear error of law).  The United States

Constitution therefore demands a revision of Mr. Turner's sentence.

## II.    *JOHNSON* ESTABLISHED A NEW, SUBSTANTIVE RULE THAT APPLIES RETROACTIVELY

The general rule against retroactive application of court decisions does not bar relief for

Mr. Turner.  Whether a Supreme Court decision applies retroactively to cases on collateral

review turns on whether the decision announced a "new rule," and if so, whether that rule

---

[11] *See also Hicks v. Oklahoma*, 447 U.S. 343, 347 (1980) (due process offended when an error of law deprives defendant of court's discretion to impose a sentence lower than maximum); *United States v. Grier*, 475 F.3d 556, 573 (3d Cir. 2007) ("due process requires [ ] that the sentence for the crime of conviction not exceed the statutory maximum"); *Narvaez v. United States*, 674 F.3d 621, 630 (7th Cir. 2011) (defendant's erroneous career-offender sentence resulted in miscarriage of justice).

satisfies an exception to the general prohibition against retroactive application of new rules.[12]

*Teague v. Lane*, 489 U.S. 288, 300-01, 305-10 (1989). New substantive rules generally apply

retroactively, whereas new rules of criminal procedure generally do not.  *Schriro*, 542 U.S. at

351-52.  As already recognized by several courts, the Supreme Court's decision in *Johnson* is

retroactively applicable on collateral review to defendants like Mr. Turner.  *See, e.g.*, *In re*

*Rivero*, No. 15-13089-C, 2015 WL 4747749, at  *10 (11th Cir. Aug. 12, 2015) ("If Rivero . . .

were seeking a first collateral review of his sentence, the new substantive rule from *Johnson*

would apply retroactively."); *Price v. United States*, No. 15–2427, 2015 WL 4621024, at *1 (7th

Cir. Aug. 4, 2015) ("We now conclude, consistently with the government's position, that

*Johnson* announces a new substantive rule of constitutional law that the Supreme Court has

categorically made retroactive to final convictions."); *United States v. Emeary*, No. 09-40529,

2015 WL 4524299, at *2 (5th Cir. July 24, 2015) (recalling mandate after finding defendant's

sentence exceeded statutory maximum following *Johnson* and recognizing *Johnson*'s retroactive

effect); *United States v. Emeary*, No. 09–40529, 2015 WL 4624170, at *1 (5th Cir. Aug. 4, 2015)

(vacating sentencing and remanding for resentencing); *Lewis v. United States,* Nos. 3:14-cv-612-

MOC, 3:11-cr-227-RJC, 2015 WL 4425676, at **2-3 (July 17, 2015) (vacating sentence and

ruling *sua sponte* that, following the Supreme Court's decision in *Johnson*, a petitioner's

underlying felonies encompassed by the residual clause no longer qualified as predicate offenses

---

[12] Any court may make the retroactivity decision and need not wait on the Supreme Court to do
so.  *See United States v. Thomas*, 627 F.3d 534, 536 (4th Cir. 2010) (holding "that § 2255(f)(3)
does not require that the initial retroactivity question be decided in the affirmative *only* by the
Supreme Court"); *Wiegand v. United States*, 380 F.3d 890, 892 (6th Cir. 2004) (holding that
"any federal court can make the retroactivity decision" for purposes of § 2255(f)(3)); *Dodd v.
United States*, 365 F.3d 1273, 1278 (11th Cir. 2004) (noting that "every circuit to consider this
issue has held that a court other than the Supreme Court can make the retroactivity decision for
purposes of § 2255[(f)](3)").

under the ACCA).  It is therefore unsurprising that the United States has already taken the

position that *Johnson* applies retroactively to cases like Mr. Turner's.  *See* Gov't Resp. to

Appellant's Mot. for Summ. Action at 4, *United States v. Imm*, Nos. 14-4809, 14-4810 (3d Cir.

filed Aug. 6, 2015) ("The government takes the position that *Johnson* applies retroactively to

Imm's ACCA sentence, even though his judgment of sentence was final."); Gov't Resp. to Appl.

at 8-15, ECF. No. 4, *Price v. United States*, 2015 WL 4621024 (7th Cir. filed July 14, 2015)

(arguing that defendant had made a *prima facie* showing that *Johnson* announced a new

substantive rule of constitutional law retroactive under *Teague* and *Schriro*).

### A.     *Johnson* **Announces a New Constitutional Rule.**

Under *Teague*, a decision announces a "new rule if the result was not *dictated* by

precedent existing at the time the defendant's conviction became final."  489 U.S. at 301; *see*

*also Butler v. McKellar*, 494 U.S. 407, 415 (1990); *Hawkins v. Murray*, 798 F. Supp. 330, 334

(E.D. Va. 1992) (same).  Here, the "rule" announced in *Johnson,* that the residual clause is

unconstitutional, was not "dictated by precedent."  Indeed, the Court expressly overruled its

"contrary holdings in *James* [*v. United States*, 550 U.S. 192 (2007)] and *Sykes* [*v. United States*,

131 S. Ct. 2267 (2011)]," which had outlined various tests to determine whether a crime qualifies

as violent under the residual clause.  *Johnson*, 135 S. Ct. at 2563.  That *Johnson* announced a

new rule is apparent from the pains the Supreme Court took to justify overruling its previous

precedent:

> The doctrine of *stare decisis* allows us to revisit an earlier decision
> where experience with its application reveals that it is unworkable.
> Experience is all the more instructive when the decision in
> question rejected a claim of unconstitutional vagueness. . . .
> Standing by *James* and *Sykes* would undermine, rather than
> promote, the goals that *stare decisis* is meant to serve.

*Id.* (citations omitted).  This Court need look no further than the Supreme Court's opinion to confirm that *Johnson* was not dictated by precedent and therefore announced a new rule within the meaning of *Teague.*

### B.    *Johnson*'s New Rule is Substantive.

Under Supreme Court precedent, a decision is "substantive" if it "narrow[s] the scope of a criminal statute by interpreting its terms," *Schriro*, 542 U.S. at 351-52, or "prohibit[s] a certain category of punishment for a class of defendants because of their status or offense," *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997) (citations and brackets omitted).  Such decisions "apply retroactively because they necessarily carry a significant risk that a defendant . . . faces a punishment that the law cannot impose upon him."  *Schriro*, 542 U.S. at 352.  Federal courts have consistently held that prior decisions of the Supreme Court narrowing the scope of the ACCA (including *Begay v. United States*, 553 U.S. 137 (2008) and *Chambers v. United States*, 555 U.S. 122 (2009)) are substantive decisions that apply retroactively to cases on collateral review.[13]  *See Welch*, 604 F.3d at 415 ("[T]he application of the ACCA imposed, at a minimum, five years of imprisonment that the law otherwise could not impose upon him under his statute of conviction.  Such an increase in punishment is certainly a substantive liability.").  That conclusion applies with even more force to *Johnson*, where the Court both narrowed the ACCA's reach by voiding the residual clause and expressly declared that "[i]ncreasing a defendant's sentence under the clause denies due process of law."  135 S. Ct. at 2557.  As the Eleventh Circuit recently explained,

---

[13] *See, e.g.*, *Bryant*, 738 F.3d at 1277-78 (*Begay*); *Narvaez*, 674 F.3d at 623 (*Begay* and *Chambers*); *Jones v. United States*, 689 F.3d 621, 625 (6th Cir. 2012) (*Begay*); *Welch*, 604 F.3d at 415 (*Begay*); *Lindsey v. United States*, 615 F.3d 998, 1000 (8th Cir. 2010) (*Begay)*; *Shipp*, 589 F.3d at 1090 (*Chambers*).

> [t]he new rule announced in [*Johnson* ] is substantive rather than
> procedural because it narrow[ed] the scope of [section] 924(e) by
> interpreting its terms, specifically, the term violent felony. . . . In *Johnson,*
> the Supreme Court held that "imposing an increased sentence under the
> residual clause of the Armed Career Criminal Act violates the
> Constitution's guarantee of due process." . . . That is, *Johnson* "narrowed
> the class of people who are eligible for" an increased sentence under the
> Armed Career Criminal Act.

*In re Rivero*, No. 15-13089-C, 2015 WL 4747749, at *2 (11th Cir. Aug. 12, 2015) (citations

omitted, some alteration in original).[14]  For these reasons, this Court should find that *Johnson*

announces a substantive new rule that it is retroactively applicable to cases on collateral review.

## III.    MR. TURNER MERITS SENTENCING TO NOT MORE THAN TIME SERVED.

Title 18 U.S.C. § 3553 sets forth factors courts should consider in determining an

appropriate sentence and requires them to impose a sentence that is "sufficient, but not greater

than necessary" to comply with the purposes of sentencing.  The relevant factors include: (1) the

nature and circumstances of the offense and history and characteristics of the defendant; (2) the

need to promote respect for the law and provide just punishment; (3) the need for deterrence; (4)

the need to protect the public; (5) the need to provide the defendant with training, medical care,

or other correctional treatment; (6) the kinds of sentences available and the applicable

Sentencing Guidelines range; (7) the need to avoid unwarranted sentence disparities; and (8) the

need for restitution for victims.  At the time of sentencing, all of these factors pointed toward a

below-Guidelines sentence.

---

[14] The Eleventh Circuit's denial of Mr. Rivero's application for leave to file a second or
successive motion to vacate his sentence turned on the fact that it was not his *first* request for
collateral review.  That part of the Eleventh Circuit's holding is irrelevant to the instant motion
because Mr. Turner is filing his first motion for collateral review, and even the Eleventh Circuit
agrees that *Johnson* applies retroactively to movants seeking collateral review for the first time.
*In re Rivero*, 2015 WL 4747749, at *10 ("If Rivero . . . were seeking a first collateral review of
his sentence, the new substantive rule from *Johnson* would apply retroactively.").

As of the date of this motion, Mr. Turner has been incarcerated for more than 65 months. But for the application of the ACCA, Mr. Turner's recommended Sentencing Guidelines range would have been 27 to 33 months, with a sentence of probation or home confinement available to the Court. *See* Ex. 2 (Gov't Sentencing Br., ECF No. 48), at 19 (Government agreeing that, absent the ACCA, the recommended Guidelines range would be 27 to 33 months). Moreover, the Government stated during sentencing that it had no intention of seeking an upward departure from the Guidelines range in the event the ACCA did not apply. *See id.* (stating position of the United States that, absent application of the ACCA, "the statutory sentencing factors . . . warrant a sentence within the advisory Guidelines range"). Because Mr. Turner has been incarcerated twice as long as the lengthiest sentence available under the advisory Sentencing Guidelines range, he now merits a sentence of not more than time served.

The nature and circumstances surrounding Mr. Turner's possession of the pistol also counsel in favor of the most lenient sentence possible. Mr. Turner acquired the pistol due to his physical vulnerability following the amputation of his leg, and not because of any intention to return to a life of crime. *See* Ex. 5 (Tr. of Sentencing, ECF No. 76), at 13:24-14:3. He possessed it for approximately five years, and there was no evidence at sentencing that Mr. Turner had acquired it or used it for any violent or criminal purpose. For this reason, there is no victim in need of restitution and no need for particularly harsh punishment. The prospect of being stripped of everything he worked so hard to gain was punishment enough for Mr. Turner's lapse in judgment which, other than placing an additional burden on the justice system, did not harm anyone.

As for deterrence and any need to protect the public, with drug addiction long behind him and a promising career before him, Mr. Turner poses no future risk to anyone. That fact is

evident from Mr. Turner's response to the loss of his leg in 2004.  That event might have upended a weaker person, but Mr. Turner rebounded from the setback like it was little more than a broken ankle.  He refused pain medications due to his history of addiction, quickly learned to walk with a prosthesis, and was back at work within a year of his accident.  *See* Ex. 4-B (Letter of Support from Sister Anita L. Terry-MacDonald) and  Ex. 4-C (Letter of Support from Sister Deborah Fields) (both noting Mr. Turner's refusal of pain medication); Ex. 1 (PSIR), ¶¶ 85-86 (reflecting Mr. Turner's departure from full-time work in May 2004 and return to full-time work in June 2005).  If ever Mr. Turner was going to succumb to his circumstances, it surely would have been then.  Nevertheless, the Court need not worry that Mr. Turner will reenter society without a safety net.  He remains fit for his career as an electrician, has a viable plan for upgrading to a Master Electrician certification, and already has a pending interview for employment in the D.C. area.  *See, e.g.,* Ex. 4-D (Letter of Support from Brother Dennis Turner).  Mr. Turner also would return home to a respectable law-abiding family and network of friends.  Sherman's mother and siblings, all now retired, have a long history of government service with respectable institutions like the Arlington County Courthouse, United States Department of Defense, and United States Customs and Border Patrol Agency.  His mother, siblings, daughters, grandkids, and nieces and nephews largely still reside in the D.C. area.  They have made a comfortable place for him in his mother's home in Arlington, Virginia, and are standing at the ready to welcome him home.  *See id.*; *see also* Exs. 4-B–4-L (Letters of Support from Family Members).

As for Mr. Turner's characteristics, other than his possession of the pistol, Mr. Turner has not committed a legal offense greater than a minor traffic infraction since 1984 and should be credited for his Herculean efforts to reinvent himself following his release from prison in 2000.

It was undisputed at sentencing that Mr. Turner had worked during the day, while attending school at night to become an electrician and that he had maintained employment in the electrical field from approximately 2000 to 2009.  He was so successful in his pursuits that he was able to purchase a home and two vehicles, to financially support himself, his wife, and his step-daughter, and to provide occasional financial assistance to other members of his family.  *See* Ex. 1 (PSIR), ¶¶ 84-86 (reflecting employment first as an electrical helper and then as an electrician); Ex. 4-F (Letter of Support from Ex-Wife Theresa Turner) (describing Mr. Turner as a good provider).

During his 10 successful years in society, Mr. Turner was not only productive, but also mentoring and charitable.  He developed strong mentoring relationships with the youngest members of his family to guard against any other Turner taking an ill-fated path.  *See* Ex. 4-G (Letter of Support from Nephew); Ex. 4-H (Letter of Support from Sister Wanda Withers); Ex. 4-I (Letter of Support from Niece Rhonda Dillard); Ex. 4-J (Letter of Support from Daughter Lakeisha Brown).  Mr. Turner's mother described him in her letter to the Pardon Attorney as a "family man" who spends quality time with his grandchildren, taking them to ballgames, skating rinks, and amusement parks and attending proud moments like high school football games.  *See* Ex. 4-K (Letter from Mother Mildred E. Turner).  As Mr. Turner's daughters describe it, Mr. Turner tried to make up for his years away from them by providing doubly for his grandkids, nieces, and nephews.  *See* Ex. 4-J (Letter of Support from Daughter Lakeisha Brown); Ex. 4-L (Letter of Support from Daughter Jakia Turner-Brown).  He performed household chores and handyman work for his mother who will turn 90 years old in October.  *See* Ex. 5-M (Letter of Support from Friend Donnie Hill).  When one of his daughters suffered a financial setback and was in need of transportation, Mr. Turner gave her his car and made the remaining car payments for her.  *See* Ex. 4-L (Letter of Support from Daughter Jakia Turner-Brown).

Mr. Turner also made a positive imprint on his community.  Given his own transgressions as a youth, during his 10 most recent years in society, he targeted community service to teenagers and at-risk kids.  He shared his story with youth groups in hopes of deterring criminal behavior and raised funds to help high school seniors visit area colleges. *See* Ex. 4-K (Letter of Support from Mother Mildred Turner) (noting Mr. Turner's speech to youth at Macedonia Baptist Church about the consequences of disobeying the law); Ex. 4-N (Letter of Support from School Counselor Timothy McNeil) (noting Mr. Turner's status as a presenter to Montgomery County Schools); Ex. 4-O (Letter of Support from Friend Anthony Shands) (noting Mr. Turner's participation in raising college scholarship funds and field trips for inner city kids).  Using his own missteps and misfortune to help others, Mr. Turner never missed an opportunity to provide encouragement and an example to persons suffering from physical disabilities and other convicted felons.  *See* Ex. 4-K (Letter of Support from Mother Mildred E. Turner) (noting Mr. Turner's assistance to an amputee suffering from depression); Ex. 4-C (Letter from Sister Deborah Fields) (noting Mr. Turner's speech to the Senior Citizen Prison Ministry).  He also delivered food to the needy and toys to underprivileged children, volunteered at a battered women's shelter, and raised funds for victims of Hurricane Katrina, all things that a responsible member of society would do.  *See, e.g.,* Ex. 4-P (Letter from Reverend Lillie I. Sanders); Ex. 4-Q (Letter from friend Victor Graves) (stating that Mr. Turner took opportunity during toy drives to encourage children toward a straight path).  According to Anthony Shands, Mr. Turner performed "more charity work [in a year] than most people do in a lifetime." Ex. 4-O (Letter of Support from Friend Anthony Shands).  Similarly, Mr. Turner's friend, Jaemohn Cloyd, told the Court:

> [T]here is no way to have you understand the magnitude of what I
> feel about [Sherman] . . . . If you knew Sherman like I know him,

> you would wonder how we got to this point.  I can not possibly
> give you a long enough letter to have you . . . understand all that he
> is.

Ex. 4-R.  Several members of law enforcement, all friends of Mr. Turner, attended portions of

his sentencing hearing as a testament to Mr. Turner's non-violent nature and striking

transformation.[15]  *See* Ex. 6 (Tr. of Hr'g, ECF No. 53) at 46:14-47:3.

By the conclusion of Mr. Turner's case, this Court, too, seemed convinced that he was a

changed man:

THE COURT:          [Y]ou have humbly explained what you've done and why you did it.  And
I wondered what in the world you were thinking why you needed a
weapon.  And, I am coming away with the idea that maybe you were not
connected with the underworld.  I could not tell why you had a weapon.
Because all the other information I had about your work record, becoming
an electrician, working with the motorcycle club and taking care of your
family seemed that you had separated yourself from the underworld.

MR. TURNER:         And I have, Your Honor, a long time ago.

THE COURT:          Well, I don't have the power to make a decision about what charges are
brought against you . . . .  [T]he Court of Appeals will not have the
opportunity to see what I saw today, to see what I saw in the initial
suppression hearing or to see the support that you have from the
community that was present at the last sentencing hearing and to fully
appreciate as I do what you've said here about who you are today and how
you've lived your life for the last ten years.  And it seems to me that if
they could see as I do, that *you are a person who I think has made a
change, a dramatic change,* who did a stupid thing for no reason . . . .

*See* Ex. 5 at 15:24-17:19 (emphasis added).  Mr. Turner's character is no less strong today than it

was on the date of sentencing.

───────────────────

[15] In addition, a 26-year veteran of the Washington, D.C. Metropolitan Police Department, a 22-
year-member of the Arlington County Sheriff's Department, the Station Commander of the
Prince George County Fire/EMS Department, and a 12-year veteran of the Fairfax County Fire
and Rescue were among the individuals who sent letters in support of Mr. Turner to the Court
and/or to the United States Pardon Attorney.  *See* Exs. 4-Q, 4-R, 4-S, and 4-T (Letters of Support
from Victor Graves, Jaemohn Cloyd, Anthony Bradley, and Aaron Newby).

Mr. Turner's need for medical care also counsels in favor of release, not confinement. The Bureau of Prisons has long been working to correct problems with Mr. Turner's existing prosthesis and undoubtedly has incurred considerable expense to transport Mr. Turner and house him for lengthy periods in a prison medical facility in Missouri.  Mr. Turner could better attend to his medical needs outside of prison, and Mr. Turner's recurring need for specialized medical attention has taken him far from his family for long periods, only magnifying a punishment that has lasted far longer than it should have.  Simply put, no one is better off with Sherman Turner in prison.  Mr. Turner should be resentenced to time served and immediately released to the welcome of his family.

At sentencing, this Court stated, "A sentence here that I have to impose is one called for by the Congress, not by the judge."  *See* Ex. 5 (Tr. of Sentencing, ECF No. 76), at 16:16-17.  Mr. Turner eagerly awaits the sentence "called for" by the Court.

## CONCLUSION

For the reasons stated above, Mr. Turner respectfully requests that this Court grant his Motion, vacate his sentence, resentence him to time served, and order him released from confinement.

Respectfully submitted,

/s/ Todd M. Richman
Geremy C. Kamens,
Acting Federal Public Defender

Todd M. Richman
Va. Bar # 41834
Todd_Richman@fd.org (email)
Assistant Federal Public Defender
1650 King Street, Suite 500

-19-

Alexandria, Virginia  22314
(703) 600-0800 (telephone)
(703) 600-0880 (facsimile)

Richard L. Beizer (VSB #02646)
rbeizer@crowell.com
Ashley N. Bailey (VSB #43819)
abailey@crowell.com
Louisa K. Marion (DC # 1005062)
lmarion@crowell.com
Tiffany V. Wynn (VSB #82832)
twynn@crowell.com
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

*Counsel for Defendant Sherman Alan Turner*

Dated:  August 19, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 19, 2015, I caused a courtesy copy of the foregoing to be

served on the United States Attorney for the Eastern District of Virginia, Dana Boente, and

served the foregoing via the Court's CM/ECF system on:

> **J. Cam Barker**
> United States Attorney's Office (Alexandria-NA)
> 2100 Jamieson Avenue
> Alexandria, VA 22314
> **NA**
> 202-514-9334

/s/ Ashley Bailey
Ashley Bailey (VSB #43819)
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
abailey@crowell.com